13-4635
*Darryl T. Coggins v. Police Officer Craig Buonora, in his individual and official capacity*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

———

August Term, 2014

(Argued: December 11, 2014   Decided: January 13, 2015)

Docket No. 13-4635

DARRYL T. COGGINS,

*Plaintiff-Appellee*,

–v.–

POLICE OFFICER CRAIG BUONORA, in his individual and official capacity,

*Defendant-Cross-Claimant-Appellant*,

COUNTY OF NASSAU, NASSAU COUNTY POLICE DEPARTMENT,

*Defendants-Cross-Defendants*,

POLICE OFFICER JAMES VARA, in his individual and official capacity, JOHN DOES 1-10, in their individual and official capacity,

*Defendants.*

———

Before:
   CABRANES, WESLEY, AND HALL, *Circuit Judges*.

Plaintiff-Appellee Darryl T. Coggins brought claims under 42 U.S.C. §§ 1981, 1983, 1985, 1986, and related state causes of action, against two police officers and their employers. Coggins alleged that the officers knowingly falsified and omitted material facts from police reports, lied to the district attorney and the grand jury, and conspired to do the same, resulting in the malicious prosecution of Coggins. Defendant-Appellant Police Officer Craig Buonora moved to dismiss, claiming that his testimony before the grand jury, while perjurious, nonetheless bestowed on him absolute immunity for any act associated with his perjury. The United States District Court for the Eastern District of New York (Joseph F. Bianco, Judge) granted in part and denied in part Buonora's motion, finding that the Supreme Court's decision in *Rehberg v. Paulk*, 132 S. Ct. 1497 (2012), granted Buonora absolute immunity from any § 1983 claim based solely on his grand jury testimony only.

For the reasons that follow, we AFFIRM the district court's Order of December 2, 2013 to the extent it denied Buonora absolute and qualified immunity from suit on certain of Coggins's § 1983 claims unrelated to his grand jury testimony. At this interlocutory stage, we decline to exercise pendent jurisdiction over Buonora's other claims of error and therefore DISMISS the balance of his appeal.

> LAURENCE JEFFREY WEINGARD, Law Offices of Laurence Jeffrey Weingard, New York, NY, *for Defendant-Appellant Police Officer Craig Buonora.*
>
> SCOTT A. KORENBAUM (Frederick K. Brewington, *on the brief*), Law Offices of Frederick K. Brewington, Hempstead, NY, *for Plaintiff-Appellee Darryl T. Coggins.*

WESLEY, *Circuit Judge*:

Plaintiff-Appellee Darryl T. Coggins brought claims under 42 U.S.C. §§ 1981, 1983, 1985, 1986, and related state causes of action, against two police officers and their employers. Coggins alleged that the officers knowingly

falsified and omitted material facts from police reports, lied to the district attorney and the grand jury, and conspired to do the same, resulting in the malicious prosecution of Coggins. Defendant-Appellant Craig Buonora moved to dismiss, claiming that his testimony before the grand jury, while perjurious, nonetheless bestowed on him absolute immunity for any act associated with his perjury. The United States District Court for the Eastern District of New York (Joseph F. Bianco, Judge) granted in part and denied in part Buonora's motion, finding that the Supreme Court's decision in *Rehberg v. Paulk*, 132 S. Ct. 1497 (2012), granted Buonora absolute immunity from any § 1983 claim based solely on his grand jury testimony only.

    For the reasons that follow, we AFFIRM the district court's Order of December 2, 2013 to the extent it denied Buonora absolute and qualified immunity from suit on certain of Coggins's § 1983 claims unrelated to his grand jury testimony. At this interlocutory stage, we decline to exercise pendent jurisdiction over Buonora's other claims of error and therefore DISMISS the balance of his appeal.

## BACKGROUND[1]

In the early morning on October 9, 2004, police officer James Vara, a defendant in the action below but not a party to this appeal, stopped Darryl T. Coggins, "because of his race and color," while Coggins drove his vehicle in Floral Park, New York. (Third Am. Compl. ("TAC") ¶¶ 5, 24.)[2] Vara proceeded to administer a breathalyzer test to Coggins, "which did not work the first time." (*Id.* ¶ 26.) Vara made a second attempt at breathalyzing Coggins and conducted a field sobriety test. (*Id.*) Coggins passed those tests and "continued to ask why he was pulled over . . . but . . . received no response." (*Id.*)

Vara called for backup; Coggins became nervous. (*Id.* ¶¶ 26–27.) When Vara placed his hand on his gun, Coggins, fearing for his life, ran. (*Id.* ¶ 27.) As he fled, Coggins saw an officer he believes was Defendant-Appellant Buonora "arrive on the scene." (*Id.* ¶ 28.) Coggins heard that officer yell "Shoot him in the back, shoot him in the back." (*Id.*) Coggins escaped. (*Id.*)

---

[1] Coggins's allegations are taken as true for the purpose of this appeal. *Transatl. Shiffahrtskontor GmbH v. Shanghai Foreign Trade Corp.*, 204 F.3d 384, 386 (2d Cir. 2000).

[2] Coggins has twice amended his Complaint since that date and moved for leave to file the Third Amended Complaint. The district court, in the decision under review, granted in part and denied in part Coggins's motion to file the TAC and relied on the TAC as the operative Complaint in its decision.

Vara and Buonora told the Nassau County district attorney that they heard a "metal noise" during their foot pursuit of Coggins and that Buonora found a gun at the scene. (*Id.* ¶¶ 51, 60, 63.) Coggins surrendered to police later in the day and, based on the officers' statements to the district attorney, he was initially charged with criminal possession of a weapon. (*See id.* ¶ 31.)

A grand jury indicted Coggins for criminal possession of a weapon and resisting arrest. (*Id.* ¶ 38.) The TAC in this case alleges, and defendants do not contest, that Vara and Buonora perjured themselves when they testified before the grand jury. (*Id.* ¶¶ 38, 114.) The officers' perjury was revealed when an unnamed Floral Park Police Officer informed Coggins's counsel that "the story [Vara and Buonora] were telling was inaccurate." (*Id.* ¶ 40.) The unnamed officer advised that, contrary to the statements and testimony of Vara and Buonora, "he [*i.e.*, the unnamed officer] was the [o]fficer who initially found a gun" and "that radio transmission[s] of October 9, 2004 would substantiate his claim." (*Id.*) Thereafter, Coggins's case was referred to the Special Investigations Divisions of the Nassau County Police Department and the District Attorney's Office. (*Id.* ¶¶ 40–41.) The charges against Coggins were subsequently dropped

on the district attorney's motion. (*Id.* ¶ 42.) Buonora was then indicted for perjury and pleaded guilty. (*Id.* ¶ 45.)

The TAC alleges that Buonora, Vara, and others "failed to file the proper paperwork pursuant to the policies and procedures" of the Nassau County Police Department ("NCPD"), (*id.* ¶ 32); that Buonora "failed to complete an incident report or any paperwork connected with the detention, chase and arrest," (*id.* ¶ 33); that Vara "falsified official documents" related to Coggins's arrest, (*id.* ¶ 34); and that Vara and Buonora conspired with each other to create "an altered version of what transpired . . . and made a conscious decision to omit certain information and include false information in the Police Report and accompanying arrest paperwork," (*id.* ¶ 35). Coggins alleges that Buonora knew that documents regarding Coggins's arrest, detention, and prosecution contained false information and omitted relevant facts, but that he did nothing to remedy the falsehoods in those accounts of the incident. (*Id.* ¶ 52.) Coggins alleges further that Buonora met with the district attorney, falsely represented to her and later testified that he had found a weapon, that he had heard a metal object hit the ground, saw it was a gun, and stayed with the gun until another police officer relieved him. (*Id.* ¶¶ 51, 55–57, 59–60.) Finally, the TAC alleges that

6

NCPD officers routinely engage in improper police practices, "particularly in situations where blacks and/or black males are involved." (*Id.* ¶ 37.)

The district court dismissed Coggins's claims for malicious prosecution and abuse of process under New York law because Coggins failed to plead the requisite special damages with specificity, but denied Buonora's motion to dismiss Coggins's remaining claims. *Coggins v. Cnty. of Nassau*, No. 07-cv-3624 (JFB), 2008 WL 2522501, at *1 (E.D.N.Y. June 20, 2008). We affirmed the district court's decision denying Buonora absolute immunity under the extra-judicial conspiracy exception, stating that, under then-existing Second Circuit precedent, "absolute immunity does not extend to allegations of conspiracy to present false testimony."[3] *Coggins v. Buonora*, 362 F. App'x 224, 225 (2d Cir. 2010) (summary order), *cert. denied*, 131 S. Ct. 995 (2011).

Thereafter, Buonora filed a second motion to dismiss and/or for summary judgment on absolute immunity grounds. Coggins cross-moved for sanctions against Buonora because, he argued, Buonora had brought the motion to dismiss "to harass, cause unnecessary delay, [and] needlessly increase the cost of

---

[3] This principle was abrogated by *Rehberg*, which held, in relevant part, that the rule of absolute immunity for grand jury witnesses in a § 1983 action "may not be circumvented by claiming that a grand jury witness *conspired* to present false testimony." 132 S. Ct. at 1506 (emphasis added).

litigation." FED. R. CIV. P. 11. Coggins also moved to amend his Complaint to plead additional facts and to clarify the causes of action in light of the Supreme Court's intervening decision in *Rehberg*.

Judge Bianco denied Buonora's motion for summary judgment without prejudice. The court noted that it was premature to convert the motion to dismiss into a summary judgment motion when neither Buonora nor Vara had been deposed. Judge Bianco dismissed Coggins's § 1983 claims regarding Buonora's perjury before the grand jury and alleged conspiracy to commit perjury on absolute immunity grounds, citing *Rehberg*.[4] However, Judge Bianco found that Coggins "allege[d] unconstitutional conduct against Vara and Buonora far beyond perjury and/or conspiring to commit perjury in the grand jury" and declined to dismiss those claims.[5] *Coggins v. Cnty. of Nassau*, 988 F. Supp. 2d 231, 237 (E.D.N.Y. 2013). The district court denied the balance of

---

[4] Judge Bianco also dismissed as untimely both Coggins's state law claims for false arrest and false imprisonment and his federal claims arising under 42 U.S.C. § 1986.

[5] Judge Bianco did not identify specifically which of Coggins's claims survive Buonora's motion to dismiss. He stated: "In short, Coggins adequately pleads facts that, if true, could establish the officers' liability under § 1983 separate and apart from the perjury. Accordingly, given the alleged non-grand jury conduct, Buonora and Vara do not have absolute immunity from suit at this juncture as a matter of law." *Coggins*, 988 F. Supp. 2d at 245.

Buonora's motion to dismiss and Coggins's motion for sanctions. Buonora filed this interlocutory appeal.

## DISCUSSION

In *Rehberg v. Paulk*, 132 S. Ct. 1497, 1506 (2012), the Supreme Court announced the bright line rule that a grand jury witness, including a law enforcement officer, "has absolute immunity from any § 1983 claim based on the witness' testimony," even if that testimony is perjurious. The *Rehberg* Court thereby expressly extended to grand jury witnesses, including police officers, the same immunity that had previously been enjoyed by witnesses at trial.[6] *Id.* This holding was consistent with the understanding that, despite its broad terms, 42 U.S.C. § 1983 does not effect a radical departure from common-law immunities. *Id.* at 1502; *see also Pierson v. Ray*, 386 U.S. 547, 554–55 (1967).

The question before us is whether a law enforcement officer is entitled to absolute immunity as a grand jury witness pursuant to *Rehberg* when a § 1983 plaintiff alleges that the officer withheld and falsified evidence in addition to

---

[6] It bears underscoring that the immunity in question is immunity from civil suits, including, as relevant here, § 1983 actions, not immunity from criminal prosecution for perjury.

committing perjury before the grand jury—an issue of first impression in our circuit.

In *Rehberg*, the chief investigator for a district attorney was sued in a § 1983 action following Rehberg's indictment based on investigator Paulk's grand jury testimony. 132 S. Ct. at 1501. Rehberg's claim of malicious prosecution was predicated *exclusively* on the allegation that the investigator lied to the grand jury. *Id.* The Supreme Court held that "a grand jury witness has absolute immunity from any § 1983 claim *based on the witness' testimony*." *Id.* at 1506 (emphasis added). It reasoned that the justifications for granting absolute immunity to trial witnesses are equally applicable to grand jury witnesses: "In both contexts, a witness' fear of retaliatory litigation may deprive the tribunal of critical evidence. And in neither context is the deterrent of potential civil liability needed to prevent perjurious testimony." *Id.* at 1505. To avoid circumvention of the immunity by artful pleading, the Court extended absolute immunity to § 1983 claims of conspiracy to present false testimony or to "preparatory activity, such as a preliminary discussion in which the witness relates the substance of his intended testimony" to the prosecutor. *Id.* at 1506–07. Importantly, however, the Court acknowledged the limited nature of its holding in a footnote: "[o]f course,

we do not suggest that absolute immunity extends to *all* activity that a witness conducts outside of the grand jury room. For example, we have accorded only qualified immunity to law enforcement officials who falsify affidavits and fabricate evidence concerning an unsolved crime." *Id.* at 1507 n.1 (citations omitted).

Buonora asserts that, at its core, Coggins's claims all "involve his grand jury appearance." Appellant's Br. 10. We disagree. Buonora's interpretation of *Rehberg* would set a dangerous precedent: Any police officer could immunize for § 1983 purposes any unlawful conduct prior to and independent of his perjurious grand jury appearance merely by testifying before a grand jury. Such an outcome would also be inconsistent with the limitations *Rehberg* explicitly imposes on the scope of the absolute immunity, which the Supreme Court instructed was not to "extend[] to *all* activity that a witness conducts outside of the grand jury room." 132 S.Ct. at 1507 n.1.

When a police officer claims absolute immunity for his grand jury testimony under *Rehberg*, the court should determine whether the plaintiff can make out the elements of his § 1983 claim without resorting to the grand jury testimony. If the claim exists independently of the grand jury testimony, it is not

11

"based on" that testimony, as that term is used in *Rehberg*. *Id.* at 1506. Conversely, if the claim requires the grand jury testimony, the defendant enjoys absolute immunity under *Rehberg*.

Denying police officers absolute immunity from civil suits for conduct other than their grand jury testimony does not risk "depriv[ing] the tribunal of critical evidence," *id*. at 1505, because the act of testifying has no impact on the officer's immunity (if any) for that other conduct. *Rehberg* noted that the specter of civil liability is not needed "to prevent perjurious testimony." *Id.* By contrast, police officers may not risk the same professional or criminal sanctions outside the grand jury context that they face when swearing to facts under oath before the grand jury. Thus, in considering incentives and deterrence, it makes sense to afford them less protection in contexts other than the grand jury room.

In this case, the TAC plausibly alleges misconduct by Buonora without reference to his perjurious grand jury testimony. The TAC's allegations are based on, among other things, Defendants' police reports, the statements of the unnamed Floral Park Police Officer, Buonora's knowledge of the falsity of Vara's police report, Buonora's statements to the district attorney,[7] and police radio

---

[7] If discovery were to establish that Buonora's statements to the district attorney constituted "preparatory activity" conducted in advance of his grand jury testimony,

transmissions. All of these facts existed before Buonora's March 2005 grand jury testimony and are independently actionable under § 1983 such that Coggins would be able to prove his claims without ever relying on the officers' grand jury testimony.[8] The fact that Buonora's grand jury testimony paralleled information he gave in other contexts does not mean that Coggins's malicious prosecution claim was "based on" Buonora's grand jury testimony. *Id.* at 1506. Rather it was based on Buonora's conduct that laid the groundwork for Coggins's indictment. The TAC alleges misconduct by Buonora that is not *based on* his grand jury testimony, and the district court properly found that absolute immunity is inappropriate.

In addition to his absolute immunity claims, Buonora also challenges on appeal the district court's denial of qualified immunity. Qualified immunity protects public officials from civil liability only "if (a) the defendant's action did

---

Buonora would be entitled to absolute immunity for that limited conduct, as stated by the Supreme Court in *Rehberg* and discussed above. *Id.* at 1506–07.

[8] In *Marshall v. Randall*, 719 F.3d 113, 114 (2d Cir. 2013), the plaintiff sued for damages arising from police officers' use of false information in his arrest. On appeal, the officers challenged "the use of their grand jury testimony as violative of the rule in *Rehberg*." *Id.* at 115. We held that "the grand jury testimony was properly admitted for impeachment purposes and that the manner in which it was used at trial did not contravene the rule in *Rehberg*." *Id.* at 116. As *Marshall* demonstrates, grand jury testimony may ultimately be admissible on summary judgment or at trial for a purpose other than for its truth, for example, for impeachment.

13

not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Salim v. Proulx*, 93 F.3d 86, 89 (2d Cir. 1996); *see generally Malley v. Briggs*, 475 U.S. 335, 344–45 (1986). Accepting as true the facts alleged and drawing all reasonable inferences in plaintiff's favor, as we must, it is clear that, at this stage, qualified immunity is not appropriate. As the district court properly concluded, the alleged falsification of evidence and the related conspiracy, if true, constitute a violation of clearly established law, and no objectively reasonable public official could have thought otherwise.

Lastly, we decline to exercise our pendent jurisdiction over the balance of Buonora's appeal. The issues he raises are neither "inextricably intertwined" nor "necessary to ensure meaningful review" of the absolute and qualified immunity questions. *See Ross v. Am. Express Co.*, 547 F.3d 137, 142 (2d Cir. 2008) (internal quotation marks omitted).

## CONCLUSION

The district court's Memorandum and Order of December 2, 2013, is hereby AFFIRMED to the extent it denied Buonora absolute and qualified

immunity from suit on certain of Coggins's § 1983 claims unrelated to his grand jury testimony. The balance of the appeal is DISMISSED.